IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 13, 2022

**STATE OF TENNESSEE v. CASEY BRYAN GIBBS**

**Appeal from the Circuit Court for Cheatham County**
**No. 2020-CR-18970          Suzanne Lockert-Mash, Judge**

_____

**No. M2021-00933-CCA-R3-CD**
_____

Defendant, Casey Bryan Gibbs, entered a nolo contendere plea to possession of methamphetamine over 0.5 grams and felon in possession of a firearm. He was sentenced to ten years in the Department of Correction to serve 180 days with the balance suspended to the Community Corrections program. Following a hearing on a community corrections violation warrant based on Defendant's failure to report, the trial court revoked Defendant's community corrections sentence and ordered him to serve the remainder of his ten-year sentence in confinement. On appeal, Defendant argues the trial court abused its discretion in fully revoking his community corrections sentence and ordering him to serve the sentence in confinement. Following our review of the entire record and the briefs of the parties, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed.**

JILL BARTEE AYERS, J., delivered the opinion of the court, in which J. ROSS DYER and JOHN W. CAMPBELL, SR., JJ., joined.

Winston P. Vaughn, Assistant Public Defender, Ashland City, Tennessee, for the appellant, Casey Bryan Gibbs.

Herbert H. Slatery III, Attorney General and Reporter; T. Austin Watkins, Senior Assistant Attorney General; W. Ray Crouch, Jr., District Attorney General; and Margaret Sagi, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Factual and Procedural Background**

On November 20, 2020, Defendant entered a nolo contendere plea to possession with the intent to sell or deliver 0.5 grams or more of methamphetamine, a Class B felony, and possession of a firearm with a prior felony conviction, a Class C felony. Defendant was sentenced as a Range I offender to ten years on the methamphetamine conviction and six years on the firearm conviction with the sentences to run concurrently, suspended to the Community Corrections program after service of 180 days in confinement.

A violation of community corrections warrant was issued against Defendant on March 16, 2021, for violating Rule #7: "I will carry out all instructions my Community Corrections Case Officer gives me, whether oral or in writing. And make a truthful report to the Community Corrections Case Officer, as instructed." In the affidavit for the warrant, the case officer alleged that Defendant called to report on February 25, 2021, the day after he was "released from jail." Defendant stated that he was living in McMinnville. Defendant was instructed to meet the case officer in person for his intake. Defendant responded that he needed to secure transportation to and from the intake office. Defendant was informed that he was on house arrest and was required to communicate any intention of leaving the house with the case officer. Defendant was further ordered to speak with the case officer on "Tuesday and Wednesday; between 8am – 6pm." February 25, 2021, was a Thursday. Defendant was therefore required to contact the case officer on March 2, 2021, or March 3, 2021. The case officer alleged that he had not heard from Defendant since February 25, 2021, and that all follow-up phone calls to Defendant went unanswered.

*Revocation Hearing – May 25, 2021*

Terrence Ross, a community corrections case officer, testified that he began supervising Defendant on February 25, 2021. Officer Ross summarized the supervision history accordingly:

> On [February 25, 2021], I spoke with [Defendant], who was released from the jail the day before, after having received a ten-year sentence on community corrections. [Defendant] currently resides in Warren County, McMinnville, Tennessee. His intake will happen here in Dickson, but will be transferred to community corrections . . . – in his current county, ASAP.

> On [March 12, 2021], there was a no-show/no-call.

Officer Ross testified that when Defendant called him on February 25, 2021, Officer Ross instructed Defendant to come to the office in Dickson as "soon as possible" for intake and to transfer his supervision from Cheatham County to Warren County. Officer Ross explained that COVID-19 did not exempt defendants from meeting a case officer in person for intake interviews. Officer Ross clarified that Defendant was required to report to him

on March 12, 2021. According to Officer Ross, Defendant stated that he lacked the means to get to Dickson County for the intake interview. Defendant understood that he was to call Officer Ross "within the next day or two about [the] transportation situation." Officer Ross began calling Defendant when he did not hear from Defendant within a week of the February 25 phone call. Officer Ross maintained that he called Defendant three or four times but no one answered. Defendant never called Officer Ross again nor did he report in person for the intake interview. Because Defendant failed to report for the intake interview, his supervision could not be transferred to Warren County. Officer Ross was unaware of any new arrest. He confirmed that the violation was based on Defendant's failure to report. Officer Ross issued a violation report when he did not hear from Defendant by March 12, 2021.

On cross-examination, Officer Ross recalled that court proceedings were conducted via Zoom when Defendant entered his plea in November 2020. He added that the proceeding was held "more than likely from [his] office." Although he could not specifically recall providing supervision information to Defendant when he entered his plea in November 2020, Officer Ross testified that he "normally" contacts the jail, in Dickson or Cheatham County, with his information.

Defendant testified that after he was charged in this case in Cheatham County, he was released on bond, and returned to McMinnville in Warren County where he served his Warren County sentence in the county jail. He denied that he was given any contact information about his supervision in this case while he was incarcerated or when he was released from the Warren County Jail. However, he recalled seeing Officer Ross in the "visitation box" after he had entered his plea in this case and recalled Officer Ross mention that the Cheatham County Community Corrections Office was relocated to Dickson due to COVID-19. After he was released from the Warren County jail, Defendant "ran a Google search" for the community corrections office in Dickson, then called the office in Dickson and eventually talked to Officer Ross. The call occurred "around the end of February" 2021.

Defendant testified that he did not have a car or a phone and had used his "ex's phone" to call Officer Ross. He explained that he had just served thirteen months in the county jail and "had nothing." When asked why he did not call Officer Ross again after his initial phone call, Defendant gave the following answer:

> Well, to be honest with you, sir, my circumstances really beat me up, you know. It was kind of discouraging, you know. I'd been locked up for so long, and I just couldn't seem to get anything to go right, you know. I just finally, barely, got a taste of my freedom back, you know. I couldn't get nothing to go right, and I – it just seemed like I kept losing everything.

Defendant confirmed that he had been released twenty days before he was arrested for the violation. Defendant asked the trial court to be returned to community corrections and testified that he would live with his grandmother who has agreed to support him in "any way possible."

On cross-examination, Defendant confirmed that on June 22, 2011, he was convicted in Warren County of initiating and manufacturing methamphetamine, and served a nine-year sentence. The nine-year Warren County sentence was suspended to probation which Defendant acknowledged he had violated "several times" with new charges of domestic assault and resisting arrest. Based on his experience in Warren County, Defendant knew that he had to report to the case officer as a requirement of probation.

As a term of the plea in this case, Defendant received another suspended sentence despite his record. In accepting the plea in this case, Defendant understood that he was required to report to the community corrections officer. He agreed that he began his community corrections sentence properly by calling Officer Ross the day after he was released from the Warren County Jail but testified that he failed to follow-up with Officer Ross because "[c]ircumstances beat [him] up." He did not deny that he simply failed to call Officer Ross and update him on his situation:

The State: But when you talked to Officer Ross, you knew you were supposed to report to him and follow up with your travel plans, and get all that stuff together right?

Defendant: Yes, ma'am.

The State: And you didn't do it?

Defendant: Yes, ma'am.

At the conclusion of the hearing, the trial court determined that Defendant had violated his community corrections sentence by failing to report to Officer Ross. The trial court revoked Defendant's community corrections sentence and ordered him to serve the sentence in confinement. The revocation order was entered on May 25, 2021. Defendant filed a pro se notice of appeal in the trial court on June 15, 2021. After counsel was appointed, Defendant filed an untimely notice of appeal in this court on August 16, 2021. This court waived the timely filing requirement in the interest of justice. The case is now before this court on appeal.

**Analysis**

On appeal, Defendant argues that the trial court abused its discretion by fully revoking his community corrections sentence and ordering him to serve the ten-year sentence in confinement. The State contends the trial court properly exercised its discretion in revoking Defendant's community corrections sentence because he failed to report to Officer Ross for the intake interview. Given the presumption of reasonableness afforded to the trial court's decision, we conclude that the trial court did not abuse its decision 1) to revoke Defendant's community corrections sentence, and 2) to order Defendant to serve his sentence in confinement as a consequence of the revocation.

The decision to revoke a community corrections sentence rests within the sound discretion of the trial court. *State v. Harkins*, 811 S.W.2d 79, 82 (Tenn. 1991). Due to "the similar nature of a community corrections sentence and a sentence of probation," the procedures and principles of probation revocation apply equally to the revocation of a community corrections sentence. *Id.* at 82-83 (citing T.C.A. § 40-35-311). Recently, in *State v. Dagnan,* the supreme court held that a trial court's probation revocation decision is reviewed for an abuse of discretion with a presumption of reasonableness "so long as the trial court places sufficient findings and the reasons for its decision as to the revocation and the consequence on the record." No. M2020-00152-SC-R11-CD, – S.W.3d –, 2022 WL 627247, at *6 (Tenn. Mar. 4, 2022). The supreme court also clarified that probation revocation is a "two-step consideration" that requires a separate exercise of discretion. *Id.* at *5 (citing T.C.A. §§ 40-35-308, -210, -311). When faced with an established violation, the trial court must 1) determine whether to revoke probation; and 2) determine the appropriate consequence for a revocation. *Id.*

We find *Dagnan* applicable to our review of the trial court's decision to revoke Defendant's community corrections sentence. "Community corrections revocation proceedings present two major issues: first, whether the terms of the community corrections sentence have been violated, and second, what sentence should be imposed if a revocation is warranted." *Carpenter v. State,* 136 S.W.3d 608, 612 (Tenn. 2004).

Community corrections sentences are governed by Tennessee Code Annotated section 40-36-106 which authorizes the trial court to conduct a revocation hearing for violations as outlined in the probation revocation statute of 40-35-311: "Failure to comply with the terms of probation subjects the offender to revocation proceedings conducted by the court pursuant to § 40-35-311." T.C.A. § 40-36-106(e)(3)(B); *see also* T.C.A. § 40-35-311(b) (May 2021) ("[w]henever any person is arrested for the violation of probation and suspension of sentence, the trial judge . . . shall, at the earliest practicable time, inquire

into the charges and determine whether or not a violation has occurred and, at the inquiry, the defendant must be present and is entitled to be represented by counsel and has the right to introduce testimony in the defendant's behalf").

Following a revocation hearing, the trial court 1) determines whether to revoke the community corrections sentence, and 2) decides whether to order the original sentence to be served in confinement or resentence the defendant to certain statutory options. "including incarceration, for any period of time up to the maximum sentence provided for the offense committed, less any time actually served in any community-based alternative to incarceration. The resentencing shall be conducted in compliance with § 40-35-210." *See* T.C.A. § 40-36-106(e)(4).

We recognize that a principal distinction between revocation of probation and revocation of a community corrections sentence is that the trial court *may* impose a new and longer sentence than was originally ordered. *Id.; see also Carpenter,* 136 S.W.3d at 611. Thus, should the trial court resentence the defendant to a new and longer sentence as a consequence of a revocation of a community corrections sentence, the trial court must consider the principles and purposes of sentencing. *Id.; State v. Crook,* 2 S.W.3d 238, 240 (Tenn. Crim. App. 1998). The same principles do not apply however, in determining the consequence of a probation revocation. "Because the trial court's authority is limited by the nature of the proceedings, it follows that the trial court is not obligated to consider the sentencing statute in a probation revocation hearing." *See State v. Steven Thacker,* No. M2011-01061-CCA-R3-CD, 2012 WL 1072005, at *3 (Tenn. Crim. App. Mar. 28, 2012).

This distinction does not alter our analysis. We conclude that the consequence of a community corrections revocation is subject to both steps of *Dagnan's* two-step analysis whether or not the trial court resentences a defendant. In this case, the trial court chose not to order a new and longer sentence, but instead ordered Defendant to serve the remainder of his sentence in confinement. Accordingly, the principles and purposes of sentencing are not implicated by the trial court's revocation decision, and our review of the lower court's decision is confined accordingly. In light of *Dagnan* and *Harkin,* we will review and address the trial court's revocation decision in this case to determine 1) whether the revocation was proper, and 2) whether confinement was a proper consequence for revocation.

Generally, discretion is abused when the trial court "applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party." *Dagnan,* 2022 WL 627247, at *5 (quoting *State v. Phelps,* 329 S.W.436, 443 (Tenn. 2010)). A reviewing court may presume the trial court's revocation decision is reasonable "so long as the trial court places sufficient findings and the reasons for its

decision as to the revocation and the consequence on the record." *Dagnan,* 2022 WL 627247, at \*5. For the presumption to apply, the trial court's findings do not need to be "particularly lengthy or detailed." *Id.* It only needs to be sufficient for this court to conduct "a meaningful review of the revocation decision." *Id.* (citing *State v. Bise,* 380 S.W.705-06 (Tenn. 2012)). This court relies on the trial court's findings for its credibility determinations. "[T]he lower court is the proper entity to make appropriate factual findings regarding the believability and reliability of the witnesses' testimony, and ultimately, to rule upon the defendant's bid for further probation." *Dagnan,* 2022 WL 627247, at \*6 (quoting *State v. Jess R. Amonette*, No. M2001-02952-CCA-R3-CD, 2002 WL 1987956, at \*4 (Tenn. Crim. App., Aug. 29, 2002)); *State v. Farrar,* 355 S.W.3d 582, 585 (Tenn. Crim. App. 2011). In cases where the trial court failed to state its reasoning for a revocation decision on the record, this court may review the decision de novo if the record is sufficiently developed, or we may remand the case to the trial court to make findings. *Dagnan,* 2022 WL 627247, at \*6 (citing *State v. King,* 432 S.W.3d 316, 327-28 (Tenn. 2014)).

Because the trial court stated its reasons on the record for revoking Defendant's community corrections sentence and ordering the service of his sentence in confinement, this court presumes the trial court's judgment to be reasonable. We will address below whether Defendant has overcome this presumption.

A trial court may revoke a defendant's community corrections sentence based on the defendant's failure to comply with the conditions of the community corrections program. T.C.A. § 40-36-106(e)(3)-(4). Proof of a violation must be established by preponderance of the evidence. *Id.* § 40-30-35-311(e) (May 2021).[1] In revocation cases, the trial court abuses its discretion when the "record contains no substantial evidence to support the conclusion of the trial judge that a violation . . . has occurred." *State v. Delp,* 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980); *see State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001). "The evidence need only show the trial judge has exercised conscientious judgment in making the decision rather than acting arbitrarily." *Stamps v. State*, 614 S.W.2d 71, 73 (Tenn. Crim. App. 1980)). It is well-established that a defendant's admission of a violation constitutes substantial evidence to support revocation. *State v. Ross Pruitt,* No. E2015-01494-CCA-R3-CD, 2016 WL 3342356, at \*4 (Tenn. Crim. App. June 8, 2016); *State v. Ashley Kelso,* No. M2016-00661-CCA-R3-CD, 2016 WL 5864623, at \*3 (Tenn. Crim. App. Oct. 7, 2016). Moreover, this court has held that "[o]nly one basis

---

[1] Several changes were made to the probation statutes of Tennessee Code Annotated sections 40-35-310 and -311 after the trial court's revocation decision of May 25, 2021. Those changes do not affect the issues before the court because they became effective on July 1, 2021, and "apply to court determinations made on or after that date." *See* T.C.A. §§ 40-35-310, -311 (July 2021).

for revocation is necessary." *State v. Joe Allen Brown,* No. W2007-00693-CCA-R3-CD, 2007 WL 4432990, at \*4 (Tenn. Crim. App. Dec. 20, 2007) (quoting *State v. Alonzo Chatman,* E2000-03123-CCA-R3-CD, 2001 WL 1173895, at \*2 (Tenn. Crim. App. Oct. 5, 2001)).

Defendant contends that the trial court abused its discretion by revoking his community corrections sentence because he "merely" lacked the resources to get a ride to the intake interview in Dickson, a two-hour drive from his home in McMinnville. He argues that he was denied the chance to show that he could successfully complete his community corrections sentence less than a month after he was released from serving another sentence in Warren County.

In ruling that Defendant had violated his community corrections sentence, the trial court found that Defendant understood the importance of reporting to the community corrections officer because he had previously received probation in Warren County. Armed with this knowledge and experience, Defendant immediately reached out to the community corrections officer after he served his sentence in Warren County. Because Defendant did not have a car or a reliable means of transportation, Officer Ross allowed Defendant to call and update Officer Ross on his situation even though Defendant was still required to report in person for intake and to transfer his supervision to Warren County. The trial court emphasized Defendant's failure to simply call and follow-up with Officer Ross regarding his transportation situation:

> Now, he called. So, yeah, I'll take that into consideration. He called and he talked to an officer. He admitted that the officer came down and talked to him during the day that he pled, so he had that information. He called. Now, if he had kept calling, but had not shown up, but kept in contact, that would be a different situation. I would look at that. But he called and the officer said, okay. Well, work on your transportation, but I need to see you in the next two or three days, and you need to call me. Well, he didn't call back. He didn't show up.

The record supports the trial court's finding by a preponderance of the evidence that Defendant violated his community corrections sentence. Defendant's admission of failing to call Officer Ross and ultimately failing to report to Officer Ross for the intake interview constitutes substantial evidence of a violation in support of revocation. Contrary to Defendant's assertion, his sentence was not revoked because he lacked the means to get to Dickson. Although he was still required to report in person, the evidence shows that the community corrections officer understood Defendant's situation and was willing to work with him in order to transfer his supervision to McMinnville. Defendant failed to call Officer Ross as instructed to update him on his situation. He also failed to answer his

phone when Officer Ross reached out to him multiple times. Defendant's testimony regarding why he did not call supports the trial court's conclusion that he deliberately chose not to comply with the terms of the community corrections program. In the first step of its discretionary authority, we conclude that the trial court properly exercised its discretion in revoking Defendant's community corrections sentence.

When a defendant's community corrections sentence is revoked, the court "may resentence the defendant to any appropriate sentencing alternative, including incarceration, for any period of time up to the maximum sentence provided for the offense committed, less any time actually served in any community-based alternative to incarceration." T.C.A. § 40-36-106(e)(4) (2020).

This court has repeatedly held that "an accused, already on [a suspended sentence], is not entitled to a second grant of probation or another form of alternative sentencing." *State v. Dannie Brumfield*, No. M2015-01940-CCA-R3-CD, 2016 WL 4251178, at *3 (Tenn. Crim. App. Aug. 10, 2016) (quoting *State v. Jeffrey A. Warfield*, No. 01C01-9711-CC-00504, 1999 WL 61065, at *2 (Tenn. Crim. App. Feb. 10, 1999)); *see also State v. Timothy A. Johnson*, No. M2001-01362-CCA-R3-CD, 2002 WL 242351, at *2 (Tenn. Crim. App. Feb. 11, 2002). Moreover, a defendant's past criminal history is "only appropriate in the second part of the two-step analysis." *Dagnan,* 2022 WL 627247, at *6, n.5 (quoting *State v. Kennedy Fleming,* No. E2017-02352-CCA-R3-CD, 2018 WL 6787580, at *3 (Tenn. Crim. App. Dec. 26, 2018)).

Defendant argues that the trial court failed to consider that "[t]he sentence imposed should be the least severe measure necessary to achieve the purposes for which the sentence is imposed" before ordering him to serve his sentence in confinement as a consequence of revocation: *See* T.C.A. § 40-35-103(4). However, Defendant's argument is misplaced. Had the trial court exercised its statutory option to resentence Defendant to a new and longer sentence under section 40-36-106(e)(4), the trial court would have retained the same discretion as the initial sentencing court and would have been subject to the principles and purposes of sentencing in the second exercise of its discretion. T.C.A. § 40-36-106(e)(2), (e)(4); *see also Carpenter,* 136 S.W.3d at 612. However, in this case, the trial court did not resentence Defendant to a new and longer sentence. Therefore, the principles and purposes of the sentencing statute are not invoked in the trial court's decision-making.

Although the trial court did not expressly mention a "two-step" process in its oral findings or use the "separate exercise of discretion language" preferred by the supreme court, the trial court's findings nonetheless suggest that the court considered the consequence imposed for the violation as a separate discretionary decision. Here, the trial court considered more than just the finding of a violation. The court considered Defendant's prior experience and understanding of alternative sentences, finding that

Defendant knew what was expected of him and deliberately failed to call Officer Ross as instructed, failed to answer Officer's Ross's calls, and failed to report for an intake interview:

> He uses the excuse, well, this is my ex's phone.
>
> Well, nobody apparently answered it. Nobody apparently returned phone calls, and so we go nearly a month where we don't hear from him. He's been on probation before. He knows how it works. And this excuse of coming in at, you know, well, I just have it bad I have it whatever. Well, we're not here to hold your hand. We're not here to, you know, say it's just pitiful, or whatever.

The trial court noted that had Defendant called Officer Ross as instructed, the court would have considered the violation differently. The trial court found that Defendant's failure to call evinced a deliberate intent to not to comply:

> You purposely did not report as instructed. You did not follow the instructions of the probation officer that said, call me. Again, that is just the smallest thing that we ask of you.
>
> That anybody could have just picked up the phone and said, [Officer] Ross, I'm still here in McMinnville. Here's my grandmother, she'll tell you. I can't get down there [to Dickson]. Is there any way – Is there a community corrections office here that I can go to and talk to them? You know, just tell me what to do. I can't do – I'll call you every day.
>
> But you didn't even do that. If you'd done that, that'd be a different thing.

Once the court revoked community corrections, it had the authority to order Defendant to serve the remainder of his sentence in confinement. *See* T.C.A. § 40-36-106(e)(4). In the second step of its discretionary authority, we conclude that the trial court did not abuse its discretion in ordering Defendant to serve the remainder of his sentence in confinement.

- 10 -

## Conclusion

For the foregoing reasons, the judgment of the trial court are affirmed.

_____
JILL BARTEE AYERS, JUDGE